## ALMIRANTE STEAMSHIP CORPORATION v. UNITED STATES.

### THE HISKO.

Circuit Court of Appeals, Second Circuit. June 17, 1929.

No. 323.

Charles H. Tuttle, U. S. Atty., of New York City (Horace M. Gray, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine and Cletus Keating, all of New York City, of counsel), for appellee.

Bigham, Englar, Jones & Houston, T. Catesby Jones, and W. J. Nunnally, Jr., all of New York City, for Underwood Typewriter Co. and other cargo owners, amici curiæ.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge. The Almirante was outward bound from New York to Havana, and was proceeding down the coast at a speed of about 12 knots an hour. She claims that her port and starboard side lights were burning; otherwise, she was dark. The tanker Hisko was proceeding up the coast from Philadelphia to New York at 10 knots an hour, and was running without any lights. Because of the possible presence of hostile submarines the Navy Department had authorized all vessels to run without lights, unless deemed necessary to avoid collision. The collision occurred shortly before 2 a. m. standard time, about 3 miles from shore, and in the vicinity of Brigantine Shoal Buoy. The night was dark, but visibility was good, although the horizon line was indistinct. When the vessels came together, the port bow of the Hisko struck the port side of the Almirante just abaft the bridge at an angle of about 20 degrees, ripping her plates so severely that she sank within 5 or 10 minutes, with the loss of six lives as well as the ship and her cargo.

At the trial the question of liability turned entirely upon disputed issues of fact.

The principal controversy was whether the Almirante was running with her side lights burning, as her witnesses testified, or was showing no lights until her red light was flashed on a few seconds before the collision, as the Hisko's crew contended. The District Judge analyzed the evidence in detail and decided this issue in favor of the libelant. He found specifically that the vessels were on crossing courses; that the red and green running lights of the Almirante were burning at the time of the collision and had been on for a period at least sufficient to give the Hisko timely notice, but that those on the Hisko had failed to see them; that such failure was probably to be accounted for because some of the Hisko's watch were temporarily absent and those remaining were intent on observing lights on her port side; that the Almirante's side lights were properly constructed and complied with the rules in respect to angle and distance of visibility; and that the Almirante could have done nothing to avoid the collision after she saw the unlighted Hisko. Consequently the Hisko was held solely responsible for the collision. ■ This appeal involves only disputed questions of fact, which upon conflicting evidence were decided against the appellant in a carefully considered opinion, which thoroughly reviews the evidence. Therefore the appellant has a heavy burden to upset the decree.

It is argued that the vessels were not on crossing courses, but were approaching head and head. Regardless of the compass courses, it is apparent that they could not have been on diametrically opposite courses. Each put her helm hard aport when they were about 600 feet apart, the Hisko reversing her engines at the same time. Had they been on exactly parallel courses, it would have been impossible for the Hisko's port bow to have struck the port side of the Almirante. On parallel courses their bows could have struck starboard to starboard, but not port to port, if both were under a hard-aport helm. For the collision to have occurred as it did, the vessels must have been on slightly divergent courses.

■ However, the decision does not turn upon the exact courses of the vessels; the real issue is whether the Almirante's side lights were displayed to the Hisko in time to avert the collision had they been observed. Concededly her red light was seen when the vessels were about 600 feet apart. It is conceivable that it was turned on at that moment, but it is most unlikely that, even in the haste of the crisis, the man who undertook to light up the ship would have so lost his head as to neglect the range and mast lights and turn on only the side lights. The Hisko herself turned on all her lights when she discovered the approaching Almirante. Moreover, we would have to disregard completely the testimony of witnesses who were examined in open court and won credence from the District Judge. Captain Grant said that his side lights had been left on purposely, because he considered there was more danger of collision than of submarine attack. Others on the Almirante's watch swore that the lights had been constantly burning.

Against this testimony, the appellant urges the improbability that the lights would have been unobserved by those on the Hisko, whose own lives would be imperiled by inattention. But the period of inattention would not have had to be very long. The vessels were approaching at the rate of 2,200 feet per minute. It is not impossible that the attention of the officers on the bridge and the lookouts forward should have been directed elsewhere during a few minutes just preceding the collision. Indeed, the evidence regarding the Hisko's watch is somewhat favorable to such an inference. The captain was not on board, and the officer in command had gone to sleep, leaving navigation to Kelly, a coast pilot, who had been continuously on the bridge for more than 16 hours. The senior watch officer had had occasion to be absent from the bridge for some minutes, and did not return until after the collision. The standby man had been sent below to get a cup of coffee for the pilot. The junior watch officer, who first discovered the Almirante, had previously had his attention directed toward an unlighted vessel which was proceeding on a parallel course less than a mile in shore from the Hisko, and had discussed her presence with the pilot. One of the bow lookouts had been looking at a light to starboard and was turning to report it when he saw the red light of the Almirante. The other bow lookout gave similar testimony before the local inspectors shortly after the collision. It is true, some of the witnesses swore they saw the hull before they saw the light, but it may nevertheless have been there. All we can say is that the Hisko saw no light on the Almirante until the vessels were almost together. That can be accounted for in other ways than by assuming that the light was not there until they saw it. Considering the improbability that the red light alone should be switched on at the last moment, and the finding of the District Judge to the contrary, there is not enough in the record to justify reversal.

The arguments that the lights must have been obscured by a patch of fog, or must have been improperly screened, seem to us to be clutching at straws. Nothing was said of fog in the Hisko's log, and the testimony which suggests this explanation is far from persuasive. As to the screening of the lights, the Almirante offered proof that the vessel's equipment was passed by the local inspectors in 1916, and proof by Captain Grant that no changes in construction of the lights had been subsequently made, together with his opinion that they were proper. Of course, the lights themselves could not be produced, as they were at the bottom of the sea. We regard the proof offered as making a prima facie case of compliance with the requirements, which was not overcome merely by showing that the lights were not seen by those on board the Hisko.

The asserted faults in the navigation of the Almirante after she discovered the Hisko are illusory; patently there was then no opportunity to avoid collision.

The decree is affirmed.